**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MELINDA K. RHODES,**

    **Plaintiff,**

                                                    **Civil Action 2:13-cv-1147**
    **v.**                                                  **Judge George C. Smith**
                                                     **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Melinda K. Rhodes, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 30), the Commissioner's Memorandum in Opposition (ECF No. 33), and the administrative record (ECF No. 27). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

### I.    BACKGROUND

In her sole contention of error, Plaintiff challenges the ALJ's determination that Plaintiff did not satisfy the criteria of Listing 12.05(C). For the sake of brevity, the Undersigned limits discussion of the record to evidence bearing on this contention of error.

Plaintiff filed an application for SSI in August 2010. She alleged disability since July 1,

2002, but later amended her onset date to January 1, 2010. (R. at 10.) After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing before an administrative law judge.

On May 10, 2012, Administrative Law Rita S. Eppler ("ALJ") held a hearing at which Plaintiff, represented by counsel, appeared and testified. (R. at 24–55.)

On August 29, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10–19.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 17, 2010, her alleged onset date. (R. at 12) The ALJ found that Plaintiff's severe impairments included borderline intellectual functioning, affective disorder, anxiety disorder, and personality-related disorder. (*Id.*)

She further found that Plaintiff did not have an impairment or combination of

---

[1]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)

At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC").  The ALJ set forth Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels.  From a mental standpoint, she is able to perform simple, repetitive tasks with only superficial interaction with coworkers and supervisors and no interaction with the general public.

(R. at 15.)  The ALJ relied upon the VE's testimony to conclude that given her RFC, she could not perform her past relevant work but that jobs exist in significant numbers in the regional and national economy that she could perform.  (R. at 17–19.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  On April 5, 2013, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1–3.)  Plaintiff then timely commenced the instant action.

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III.     ANALYSIS

As set forth above, in her sole contention of error, Plaintiff challenges the ALJ's determination that she does not satisfy Listing 12.05(C). According to Plaintiff, "her school records, her prior contact with Child Protective Services, and her examination with Dr. Miller" reflect that she meets the diagnostic criteria of Listing 12.05(C). (Pl.'s Statement of Errors 7, ECF No. 30.)

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled at step three of the sequential evaluation process. 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of*

*Health & Hum. Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant." *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). It is not sufficient to come to close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

Listing 12.05 covers impairments related to intellectual disability.[2] Specifically, Listing 12.05 states:

> [Mental retardation] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \*    \*    \*
>
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. 404, Subpt. P, App. 1 § 12.05. Thus, in order to satisfy Listing 12.05(C), a claimant must demonstrate the following:

---

[2] In August 2013, the term "mental retardation" was replaced with "intellectual disability." To avoid any confusion with the ALJ's decision and the parties' briefing, the Court will use the term "mental retardation."

5

>(1) he [or she] experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period" (i.e., the diagnostic description); (2) he [or she] has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) he [or she] suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

*West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697-98 (6th Cir. 2007) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C)). To satisfy the diagnostic description, a claimant must demonstrate three factors: "(1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009). A claimant may meet the onset requirement either directly or circumstantially.

"The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills." *Hayes*, 357 F. App'x at 677. Although Listing 12.05 does not define "adaptive functioning," another portion of the Listings defines "adaptive activities" as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 CFR Pt. 404, Subpt. P, App. 1 § 12.00(C)(1). Further, in considering Listing 12.05, the Sixth Circuit has noted that "[t]he American Psychiatric Association defines adaptive-skills limitations as '[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'" *Id.* (quoting DSM-IV-TR at 49).

In this case, the ALJ found that Plaintiff's level of adaptive functioning was inconsistent with Listing 12.05(C), reasoning as follows:

>Although the record documents IQ scores of 66, [Plaintiff's] actual level of

6

>adaptive functioning is inconsistent with the requirements of Listing 12.05C, which addresses mental retardation. In November 2010, she reported that she enjoyed reading, though she struggled with reading a newspaper. She was able to spell the word "world" in reverse with no errors. She exhibited good problem solving and organizational abilities with respect to executive skills. She reported that she cared for her children, prepared meals, did laundry, cleaned, washed dishes and grocery shopped. She has a history of some work activity. At the hearing, she testified that she had been taking classes twice a week for three hours at a time for six months to earn her general education degree ("GED"). She said that she washed dishes, swept, mopped, dusted, cleaned laundry, cooked, grocery shopped two to three times a month, cared for a flower garden and enjoyed reading mysteries. She testified that she had passed a written driver's examination, though she did not complete the driving portion of the examination. Her activities are inconsistent with even mild mental retardation.

(R. at 13 (internal citations to the record omitted).)

Although the ALJ did not err in taking Plaintiff's examination performance, activities of daily living, family history, and work history into consideration, the Undersigned cannot conclude that substantial evidence supports her listing determination because it appears that she did not consider Plaintiff's education records when assessing whether Plaintiff manifested the requisite deficits in adaptive functioning during the relevant time period. As the Sixth Circuit recently reiterated, "'substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). Certainly, the ALJ can consider the entire record without directly discussing each piece of evidence. But the ALJ's failure to mention Plaintiff's education records is problematic where, as here, the evaluators repeatedly opine that Plaintiff is "developmentally handicapped," assess "mental retardation," and note that Plaintiff is exhibiting various deficits in her functioning. (*See* R. at 225–45 (Plaintiff placed on Indvidualized Education Plan ("IEP"), in program for "developmentally handicapped," and in special education classes); R. at 229 (noting difficulty following three or

7

more step directions); R. at 230 (noting deficits in Plaintiff's communications skills and ability to manage her leisure time); R. at 233 (assessing Plaintiff with "Mental Retardation" defined as "a significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period that adversely affect a child's educational performance"); R. at 235 (noting that in addition to Plaintiff's low intelligence evaluation scores, she exhibits deficits in adaptive functioning); R. at 237 (noting expressive language and communication is an "[a]rea of concern" for Plaintiff); R. at 241–42 (reflecting that Plaintiff failed proficiency tests despite numerous accommodations).)

Accordingly, it is **RECOMMENDED** that the Court remand this action to the Commissioner and ALJ for consideration of Plaintiff's education history and records within the assessment of whether Plaintiff exhibited the requisite adaptive deficits prior to age twenty-two.

## IV.     CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## V.     PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**


Date:  August 17, 2015                                          /s/ *Elizabeth A. Preston Deavers*
                                                                            Elizabeth A. Preston Deavers
                                                                            United States Magistrate Judge